CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 03 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY L. ROBERTSON,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:06cv00729<br>)<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>Defendant. | ) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Terry L. Robertson ("Robertson") brings this action for review of the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383. The parties have consented to the court's jurisdiction and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case must be reversed and remanded for further administrative proceedings.

I.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the Commissioner's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the Commissioner or an administrative law judge ("ALJ"), but instead must defer to their determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389,

401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The ALJ makes disability determinations pursuant to a sequential five step-process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The second step requires a determination as to the severity of the claimant's medical impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. The third step requires the ALJ to determine whether the claimant has an impairment that satisfies one or more of the impairments listed in Appendix 1 of the agency's regulations. 20 C.F.R. § 404.1520(a)(4)(iii), (d), (e); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If an ALJ finds that a claimant meets this test, then the inquiry proceeds no further and the claimant is found to be disabled. 20 C.F.R. § 404.1520(d). Prior to proceeding to the fourth and fifth steps the ALJ must make an assessment of the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The fourth and fifth steps require the ALJ to consider the RFC and to analyze whether the claimant is able to perform any past relevant work or, if not, any other work. 20 C.F.R. § 404.1520(a)(4), (f), (g). When a decision is made at any step that the claimant is either disabled or not, then the review need not continue to the next step. 20 C.F.R. § 404.1520(a)

## II.

Robertson's efforts to obtain disability benefits have a long and tortured history. The record contains transcripts of administrative hearings conducted on February 4, 2004, February 9, 2006 and July 29, 2006, hearing decisions rendered on February 22, 2002, August 4, 2004 and September 14, 2006 and a district court remand order entered on November 3, 2003. The administrative record is huge, encompassing 825 pages.

2

Despite the size and complexity of Robertson's disability application, it must be remanded for further administrative consideration for one simple reason. While the court finds that the ALJ properly determined Robertson's RFC based on a fully substantiated assessment of Robertson's physical and mental limitations, one piece of evidence is missing. The ALJ determined that Robertson could return to his past relevant work as inspector and stocker, and did so expressly relying on the testimony of a vocational expert ("VE") at the June 29, 2006 hearing. The problem with the VE's testimony, however, is that the VE, in opining that a hypothetical person with Robertson's limitations could return to these jobs, did not address any of the non-exertional (mental) limitations noted by the ALJ in Robertson's RFC. The VE plainly testified that a person with Robertson's physical limitations could do the stocker and inspector jobs, but the VE left unaddressed the non-exertional limitations in the detailed RFC determined by the ALJ. As such, under Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989), the case must be remanded for a complete and proper vocational assessment.

### III.

Robertson was born on December 15, 1960, completed high school and has past relevant work as a stock clerk, fork lift operator, truck frame inspector, ripsaw operator and upholsterer. (R. 358-59, 388, 396) Robertson's original application for disability was filed in 2000, but he amended the alleged date of onset during the February 9, 2006 administrative hearing to August 5, 2004. Although the record in this case is itself massive, Robertson attaches additional, new evidence not considered by the ALJ to his summary judgment brief in this case.[1] Robertson's date last insured for DIB benefits is December 31, 2005.

---

[1] As a result, this case presents two issues – a request for remand under sentence 4 and a request for remand under sentence 6 of 42 U.S.C. § 405(g).

3

Robertson claims disability based on back and right arm and shoulder pain, anxiety and depression. Robertson has a long history of working, but suffered a host of injuries while doing so. According to the record, Robertson was injured on the job at Roanoke Electric Steel in 1985 when he was hit in the back of the right knee with a hot steel rod. He was also injured around 1988 when his right hand got caught in a hydraulic vice, straining his right shoulder and neck. In 1994, Robertson was injured in a furniture factory when he was pinned between a large piece of furniture and the wall. (R. 448-49) As a result of these injuries, Robertson stopped working in early 2000.

Robertson claims disability from a combination of exertional and non-exertional limitations, which the ALJ's detailed and well-supported RFC assessment take into consideration. (R. 242) For example, as to exertional limitations, Robertson is assessed as having an RFC at the light exertional level, which is amply supported in the record.

As to Robertson's physical limitations, he was treated for his right shoulder, arm and back claim by Dr. George Henning, an orthopedist, from early 2001 through 2004. In 2001, Robertson told Dr. Henning that he had been laid off from work and unable to work for the past year. (R. 800) An MRI taken in late summer of 2001 showed "a small disc at 6-7, but really did not have any significant protrusion and he had no problems with his neural foramina, etc." (R. 798) Dr. Henning's 2001 physical exam showed that on extremes of motion, Robertson had a "slight amount of discomfort," and that he had good range of motion in his shoulder. (R. 798) Nerve conduction studies showed no evidence of carpal tunnel in his right wrist. (R. 797) On examination on September 14, 2001, Dr. Henning noted good grip strength in Robertson's right hand, reasonable motion in shoulder and extremes of which produce some discomfort. "But in general, he seems to be tolerating his situation reasonably well." (R. 797) Dr. Henning referred

4

Robertson for pain management near the end of 2001. He was seen by Dr. Henning on December 31, 2001, at which time Dr. Henning stated:

> There has been some confusion in the past about what he can and can't do with his arm. He certainly can use his hands for fine manipulation on pretty much an ongoing basis. But if he has to use his shoulder and elbow for anything such as cleaning, polishing, repetitive lifting, he won't be able to do this. I would think that he is going to be pretty much limited with his arm. . . . I think that his employment prospects now are nil.

(R. 794) Robertson's next visit with Dr. Henning was 18 months later, on June 17, 2003, at which time Dr. Henning notes "He is getting along reasonably well." Dr. Henning noted reasonably good motion in Robertson's shoulder. (R. 793) Dr. Henning saw Robertson again on December 4, 2003 complaining of significant problems with neck pain. (R. 820) Dr. Henning noted that "I don't think that he can do much in the labor market that would require any stooping, bending, lifting or overhead work." (R. 820) A Physical Capabilities Evaluation completed by Dr. Henning sometime prior to May, 2004, albeit undated, states that "he may be able to do light work. No lifting over 10 to 15 pounds." (R. 825) Dr. Henning saw Robertson again on February 9, 2004 for a follow up on his right shoulder and neck. Dr. Henning's note states that "[t]hings have really not changed much with him. He doesn't have a tremendous amount of pain. He does have some problems with his shoulder and neck. This certainly dates back to his original injury with Roanoke Electric Steel." (R. 446) Thus, the assessment of Robertson's long term treating orthopedist, Dr. Henning, is consistent with the RFC determined by the ALJ as to exertional limitations.

Also consistent with the ALJ's RFC are state agency reviews conducted by Drs. Humphries (R. 778-92), Surrusco (R. 803-810) and Johnson (R. 452-58). Each of these state

5

agency evaluations found that Robertson had the ability to perform work at least at the light exertional level. See 20 C.F.R. 404.1567(b).

Moreover, Dr. Murray Joiner, a physical medicine specialist, saw Robertson, in August, 2004. (R. 448-51) Dr. Joiner's note indicates that Robertson complained of right shoulder, neck, low back and right knee pain. (R. 449) On physical exam, Dr. Joiner noted that Robertson's right shoulder, elbow and knee all had "full active range of motion." (R. 450) The spinal exam revealed negative straight leg raising, decreased lumbar lordosis, and "diffuse lumbar paraspinal tenderness bilaterally with increased tone L4-5, L5-S1." (R. 451) Dr. Joiner's impression, among other things, was "chronic right cervicothoracic spasms and pain (myofascial pain syndrome)" and tendonitis. (R. 451) Dr. Joiner planned to schedule Robertson for a functional capacity evaluation for verification of work capabilities. (R. 451)

Bill Mercer, a physical therapist at Professional Therapies of Roanoke performed a Functional Capacity Evaluation on Robertson on March 15, 2005. Mercer reported to Dr. Joiner that "[t]he results indicate that this Patient gave unreliable efforts that were diminished or biased by disability behaviors or active choice to portray efforts that are less than true. Based on this presentation, the efforts identified this date cannot be safely used to consider return to work possibilities." (R. 461) Mercer noted in his summary that the test validity was poor with only 48% of the validity items scored as valid. (R. 461) The results on the McGill-PRI indicated a "[h]igh probability of symptom exaggeration." (R. 465)

Upon his return to Dr. Joiner, Robertson asked Dr. Joiner to assist with his application for social security disability. Dr. Joiner's note, which speaks volumes, reads as follows: "We informed the patient that the assistance we will give has been the Functional Capacity

6

Evaluation, which he is to take to his attorney, to utilize as he sees fit. This speaks for itself. We will not elaborate further." (R. 477) Robertson did not see Dr. Joiner again.

Robertson's treatment thereafter was with Kuumba Community Health & Wellness Center, beginning in October 2005. Robertson was diagnosed with depression, chronic pain, hypertension, insomnia due to pain and obesity. (R. 484) Robertson was referred to Ann Sauls, a Licensed Clinical Social Worker, for depression. Robertson was seen by Kuumba on a periodic basis for his complaints of pain and hypertension over the next year, but these records are unremarkable from a functional standpoint.

Beginning in November 2005, Ms. Sauls saw Robertson a couple of times a month. Throughout these sessions, Robertson was counseled for his unresolved grief and associated depression from the death of his spouse, relations with family members, and concerns regarding his health, chronic pain and social security disability application. Robertson was prescribed some medications for depression. The last session with clinical social worker Sauls in the record was June 26, 2006. (R. 518) While Ms. Sauls' clinical notes reflect Robertson's ongoing depression and isolation, there is very little in these records concerning his ability to work.[2]

---

[2]Attached to Robertson's brief are additional counseling records from Ms. Sauls concerning three counseling sessions in August and September, 2006. The records from these sessions reflect that the discussions focused on family matters, and did not contain any vocational assessment. There is nothing in these new records to warrant a remand under sentence 6 of 42 U.S.C. § 405(g). The same is true as regards the other records attached to Robertson's brief concerning his physical limitations. Robertson submits additional records from Dr. Sheffrey, a neurologist at the University of Virginia Medical Center and a medical source checklist from Dr. Pijanowski, a local doctor, which limits him to lifting less than 10 pounds occasionally and frequently and less than two hours sitting, standing or walking. Dr. Sheffrey concludes that Robertson cannot return to manual labor but could do sedentary work. As to Dr. Pijanowski, the Commissioner argues that his checklist assessment is unsupported by any clinical notes or any testing, which is true. There are no clinical notes or explanations which support this checklist. As such, these additional materials would not cause the Commissioner to change its decision and likewise do not support a sentence 6 remand.

As to Robertson's claim of a non-exertional limitation, a Mental Status Examination and Clinical Interview was performed by a DDS psychologist Belinda G. Overstreet, Ph.D., LCP, on March 13, 2006. (R. 503-510) The ALJ ordered this consultative evaluation following the administrative hearing held on February 9, 2006. (R. 331) In her report, Dr. Overstreet discusses Robertson's reported anxiety, depression and withdrawal in a detailed report and listed his Global Assessment of Functioning at 69.[3] As to Robertson's ability to follow instructions and complete tasks, Dr. Overstreet noted only mild to no impairments. Dr. Overstreet did note moderate impairments in Robertson's ability to interact appropriately with the public, co-workers and supervisors, and mild impairments in responding to work pressures and changes in routine. (R. 508-09) As to vocational characteristics, Dr. Overstreet's report noted:

> Mr. Robertson is able to understand, recall, and carry out simple instructions. He demonstrates mild impairments in attention, concentration and memory. These impairments are likely to mildly impair his ability to understand, recall, and carry out complex/detailed instructions. He is able to understand basic work rules and make simple work decisions. Mr. Robertson reports motivational problems which are likely to result in difficulty persisting with tasks. Mr. Robertson reports being suspicious of others. This suspiciousness is likely to impair his ability to work cooperatively with others. He is a poor candidate for working with the public. Mr. Robertson is likely to require additional supervision to assist him with task persistence and to mediate interactions with coworkers.

(R. 507)

Following Dr. Overstreet's evaluation, an additional administrative hearing was held. (R. 334-61) The ALJ appeared to accept Dr. Overstreet's assessment in formulating Robertson's

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders Fourth Edition 32 (American Psychiatric Association 1994). A GAF of 61-70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

8

RFC from a non-exertional standpoint, and, in fact, the RFC pegged by the ALJ in his decision tracks exactly Dr. Overstreet's Mental Status Examination. (R. 242)

Consistent with the assessment of Dr. Joiner, Dr. Overstreet noted Robertson's propensity to exaggerate his condition. Dr. Overstreet noted that "Robertson has a history of responding to assessments with an exaggeration of symptoms. This could be the result of malingering or of wanting others to recognize that he needs help. In either case, the examiner found Mr. Robertson's presentation and report of symptoms to be questionable." (R. 506) Based on a careful review of the record, plainly there is substantial evidence to support the RFC determined by the ALJ as to both Robertson's physical and mental limitations.

## IV.

That, however, does not end the inquiry as there must be substantial evidence to support the ALJ's decision at step four that Robertson can return to his past relevant work as an inspector or stocker. Although the record in this case is 825 pages long, one need only look at four of those pages – two from the June 29, 2006 administrative hearing, (R. 359-60), and two from the September 14, 2006 hearing decision, (R. 242, 249) – to find that the ALJ's decision at step four lacks any evidentiary support, much less support at the level of substantial evidence.

As noted previously, on page 242 of the record, the ALJ sets forth a detailed and amply supported RFC for Robertson. That RFC, well supported in the voluminous medical record, keys off of the physical residual functional capacity assessment done by Dr. Johnson on October 20, 2004 and concurred with by Dr. Williams on December 27, 2004. (R. 452-58) As to non-exertional limitations, the ALJ's RFC mirrored the findings of Dr. Overstreet's mental status examination and clinical interview conducted on March 13, 2006. (R. 503-510)

On page 249, the ALJ decides that Robertson can return to his past relevant work as a stocker and an inspector, reasoning as follows:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The independent vocational expert testified that with his residual functional capacity as found herein, the claimant is able to perform his past relevant work as a stocker and an inspector. She indicated that her testimony is consistent with the Dictionary of Occupational Titles.

(R. 249) Thus, the evidentiary support for the ALJ's decision that Robertson can return to his past relevant work appears to be based entirely on the testimony of the VE at the June 29, 2006 administrative hearing.

When one reviews the VE's testimony at pages 359-60, however, it is evident that the VE never gets around to testifying about whether a person having the non-exertional limitations specified by Dr. Overstreet and included in the RFC could perform Robertson's past relevant work. On page 359, the VE plainly testifies that from a physical standpoint, a person having the limitations in the RFC could perform light work such as a stocker and truck frame inspector. However, the VE skips over the vocational implications of the mental limitations found in Dr. Overstreet's report and reflected in the RFC and simply does not address them. This, of course, undermines and renders unsupported the ALJ's conclusion that a person having Robertson's RFC could perform Robertson's past relevant work. As such, this case must be remanded for a complete vocational assessment of a person having Robertson's RFC, including both the physical and mental limitations contained in the RFC.

An ALJ must take into account all the specific limitations of a claimant when crafting a hypothetical question to a VE. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. Johnson v.

Barnhart, 434 F.3d 650, 659 (4th Cir. 2006) (quoting Walker, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and then relying upon an incomplete hypothetical when reaching a judgment constitutes an error of law. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D.Va. 2002).

Because the VE's testimony upon which the ALJ based his decision at step four did not include any assessment of the mental limitations found in the RFC, it is of little relevance or assistance in making a judgment in this case. Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50). It may well be the case that the VE's testimony would be unchanged once Robertson's non-exertional limitations are considered. However, the court cannot review this decision and make a judgment based on speculation as to what a VE may testify to and what the Commissioner may decide based on such testimony. See Jolly v. Barnhart, 465 F. Supp. 2d 498, 505 (D.S.C. 2006) (finding remand appropriate for development of VE testimony since the court would not speculate as to what such testimony would be).

For the reasons noted above, the court finds this case must be reversed and remanded to the Commissioner for further administrative proceedings consistent with this opinion.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 3rd day of December 2007.

_____
Michael F. Urbanski
United States Magistrate Judge